UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PLESHETTE LA RENE HITE, )    No. EDCV 14-1925 AGR
                Plaintiff, )
                      )
        v. )    MEMORANDUM OPINION AND ORDER
                      )
CAROLYN W. COLVIN, )
Commissioner of Social Security, )
              Defendant. )

Plaintiff Pleshette La Rene Hite filed this action on September 26, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On April 29, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings.

## I.

## **PROCEDURAL BACKGROUND**

On May 3 and 11, 2010, respectively, Hite filed applications for disability insurance benefits and supplemental security income, alleging an onset date of March 23, 2008.  Administrative Record ("AR") 20, 136-43.  The applications were denied initially and on reconsideration.  AR 20, 75-76, 80-81.  Hite requested a hearing before an Administrative Law Judge ("ALJ").  AR 96-97.  On March 30, 2012, the ALJ conducted a hearing at which Hite and a vocational expert testified.  AR 40-74.  On August 9, 2012, the ALJ issued a decision denying benefits.  AR 17-34.  On July 23, 2014, the Appeals Council denied the request for review.  AR 1-4.  This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

III.

**DISCUSSION**

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Hite met the insured status requirements through March 31, 2010.  AR 22.  Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Hite had the severe impairments of fibromyalgia, polymyositis, status-post ventral hernia repair with mesh, and depression.  AR 22.  Her impairments did not meet or equal a listing.  AR 24.  She had the residual functional capacity ("RFC") to perform medium work, except she was capable of understanding, remembering and carrying out simple one to two step tasks.  AR 25.  She was unable to perform past relevant work, but there were jobs that existed in significant numbers in the national economy that she could perform, such as hand packager, floor waxer and laundry worker, II.  AR 33-34.

### C.   Listing 14.05E

Hite contends that ALJ erred in finding she did not meet or equal a listing, specifically, Listing 14.05E.

---

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

1   The claimant bears the burden of demonstrating that his or her impairments are
2   equivalent to one of the listed impairments that are so severe as to preclude substantial
3   gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L.
4   Ed. 2d 119 (1987).  "If the impairment meets or equals one of the listed impairments,
5   the claimant is conclusively presumed to be disabled.  If the impairment is not one that
6   is conclusively presumed to be disabling, the evaluation proceeds to the fourth step."
7   *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§
8   404.1520 (a)(4)(iii), 416.920 (a) (4)(iii).

9   "The listings define impairments that would prevent an adult, regardless of his
10  age, education, or work experience, from performing *any* gainful activity, not just
11  'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107
12  L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original).  "For a
13  claimant to show that his impairment matches a listing, it must meet *all* of the specified
14  medical criteria.  An impairment that manifests only some of those criteria, no matter
15  how severely, does not qualify."  *Id.* at 530 (citation omitted) (emphasis in original).

16  "To *equal* a listed impairment, a claimant must establish symptoms, signs and
17  laboratory findings 'at least equal in severity and duration' to the characteristics of a
18  relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed
19  impairment 'most like' the claimant's impairment."  *Tackett*, 180 F.3d at 1099 (quoting
20  20 C.F.R. § 404.1526) (emphasis in original).  "'Medical equivalence must be based on
21  medical findings.'  A generalized assertion of functional problems is not enough to
22  establish disability at step three."  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526).  "An ALJ
23  must evaluate the relevant evidence before concluding that a claimant's impairments do
24  not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a
25  conclusion that a claimant's impairment does not do so."  *Lewis v. Apfel*, 236 F.3d 503,
26  512 (9th Cir. 2001).

27

28

The ALJ found that Hite did not have an impairment or combination of impairments that met or equaled a listed impairment.  The ALJ noted that no treating or examining physician had recorded findings equivalent in severity to the criteria of any listed impairment, nor did the evidence show medical findings that were the same or equivalent to those of any listed impairment.  AR 24.

Listing 14.05E requires "[r]epeated manifestations of polymyositis or dermatomyositis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" and a marked limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.05E.

Although Hite specifically cited Listing 14.05E, she does not demonstrate that she met or equaled Listing 14.05E.  Hite offers no theory as to how her impairments combined to equal a listed impairment.  *Lewis*, 236 F.3d at 514 (claimant did not satisfy burden to prove that he equaled a listing when he "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment . . . [n]or has he pointed to evidence that shows that his combined impairments equal a listed impairment.").  The record does not indicate two constitutional symptoms and does not show a marked limitation in any of the three categories.

In her reply, Hite argues that the ALJ erred in failing to develop the record with a medical expert.  The ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled."  SSR 96-6p.  The ALJ may satisfy the duty to receive expert opinion evidence into the record by obtaining the signature of a State medical consultant on an SSA-831-U5, SSA-832-U5 or SSA-833-U5 form, or by "various other documents on which medical and psychological consultants may record their findings."  *Id*.  The record contains findings completed by Dr. Laiken and Dr. Paxton, State medical consultants, showing that Hite's physical conditions did not meet

1   or equal a listing.  AR 360, 397.  The record also contains a Psychiatric Review

2   Technique and a Mental Residual Functional Capacity Assessment completed by Dr.

3   Loomis, a State medical consultant, showing that Hite's mental impairment did not meet

4   or equal a listing.  AR 361-74.  The requirements of SSR 96-6p have been satisfied.

5          The ALJ evaluated and discussed the medical evidence in detail and correctly

6   found that Hite did not meet or equal a listing.[2]  AR 17-34.  The ALJ did not err.

7          **D.    RFC Assessment**

8          The RFC determination measures the claimant's capacity to engage in basic

9   work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d

10   462 (1986).  The RFC is a determination of "the most [an individual] can still do despite

11   [his or her] limitations."  20 C.F.R. § 404.1545(a).  It is an administrative finding, not a

12   medical opinion.  20 C.F.R. § 404.1527(e)(2).  The RFC takes into account both

13   exertional limitations and non-exertional limitations.  The RFC must contain "a narrative

14   discussion describing how the evidence supports each conclusion, citing specific

15   medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

16   observations)."  Social Security Ruling ("SSR") 96-8p.[3]  The ALJ must explain how he or

17   she resolved material inconsistencies or ambiguities in the record.  *Id.*  "When there is

18   conflicting medical evidence, the Secretary must determine credibility and resolve the

19   conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation omitted).

20          The ALJ determined that Hite could perform medium work, except she could

21   understand, remember and carry out simple one to two step tasks.  AR 25.

22

23   _____

24          [2]   *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is
     unnecessary to require the Secretary, as a matter of law, to state why a claimant failed

25   to satisfy every different section of the listing of impairments.").

26          [3]   Social Security rulings do not have the force of law.  However, they "constitute
     Social Security Administration interpretations of the statute it administers and of its own

27   regulations," and are given deference "unless they are plainly erroneous or inconsistent

28   with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

## 1.    Mental Impairments

Hite contends the ALJ did not take into account her moderate impairments in concentration, persistence and pace, and the ability to interact with supervisors, coworkers and the public.[4]  Hite argues that the ALJ gave "significant weight" to the opinion of Dr. Taylor, a consultative examiner, but did not incorporate these findings into the RFC assessment.

Dr. Taylor performed a psychological evaluation on August 13, 2010.  AR 337. Dr. Taylor opined that Hite's history indicated intellectual functioning "much higher" than her Full Scale IQ score of 65.[5]  AR 340, 342.  Hite reported that she did not attend special education classes.  She graduated high school and attended medical assistant vocational training.  She earned over $13 per hour at her last job in 1998.  AR 342.

Dr. Taylor opined that Hite was moderately impaired in two general areas.  Hite's ability to maintain attention, concentration, persistence and pace was moderately impaired.  AR 342.  She performed poorly on standardized measures of intelligence, learning and memory.  She exhibited psychomotor retardation and her speech was slow in response time.  AR 340, 342.  Her ability to maintain focus and resist distraction was poor.  AR 340.  Hite's ability to relate and interact with supervisors, coworkers and the public was moderately impaired.  AR 343.  Dr. Taylor noted that Hite's mood was depressed, sad and tearful with poor eye contact, and possibly affected her performance on the tests.  AR 340, 343.  Dr. Taylor diagnosed pain disorder associated with both psychological factors and general medical condition.  AR 342.

---

[4]    Although she argues that the jobs identified by the ALJ require interaction with the public, co-workers, and supervisors, the Dictionary of Occupational Titles ("DOT") describes the interaction as "not significant."  DOT 361.685-018 (laundry worker, II); 381.687-034 (floor waxer); 920.587-018 (hand packager).

[5]    Dr. Taylor gave Hite a Global Assessment of Functioning ("GAF") score of 62, which indicates mild symptoms or some difficulty in social, occupational, or school functioning, "but generally functioning pretty well."  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (4th ed. text rev. 2000).

1        The ALJ gave Dr. Taylor's opinion "significant weight."  AR 31; *see* AR 28.  The

2   ALJ found Dr. Taylor's findings consistent with objective signs noted in his report, Hite's

3   sparse mental health treatment and the "generally unremarkable" mental status

4   examinations in the record.  AR 31-32.  The ALJ noted mental assessments in February

5   and March 2011.  AR 29, 732-39.  She was diagnosed with major depressive disorder,

6   recurrent, severe.  Her GAF score was 45.[6]  AR 732-33.  The ALJ noted that the record

7   contained no other mental health treatment records.[7]  AR 30.

8        The ALJ limited Hite to simple one to two step tasks.  AR 25.  The Commissioner

9   cites *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).  In that case, treating

10  physicians noted the claimant's slow pace in thinking and actions, and concluded the

11  claimant had sufficient ability to maintain attention and concentration for extended

12  periods to carry out simple tasks.  *Id.* at 1173-74.  By contrast, Dr. Taylor's assessment

13  of moderate limitations reflected not only Hite's psychomotor retardation but also her

14  poor performance on standardized tests, which was possibly the result of her depressed

15  and tearful mood.  AR 342.  Under these circumstances, the court agrees that the ALJ

16  did not address Dr. Taylor's limitations on concentration, persistence or pace.  *See*

17  *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996); *see also Thomas*, 278 F.3d at

18  956; *Abrego v. Comm'r*, 2000 U.S. Dist. LEXIS 8900 (D. Or. 2000).

19              **2.    Physical Impairments**

20       Hite argues that the ALJ's RFC for medium work was inconsistent with her history

21  of hernia and ankle fracture.

22       Hite noted having a hernia at an evaluation on February 16, 2010, but reported

23  that she had not had any work up since 2008.  AR 27, 417.  At the February 16

24  appointment, she was told to apply for Medically Indigent Adult ("MIA") insurance to

25  

26      [6]    A GAF score of 45 indicates serious symptoms or serious impairment in social,

27  occupational, or school functioning.  *See* DSM-IV 34.

28      [7]    The ALJ gave "no consideration" to the nonsevere mental assessment by the
State Agency medical consultants.  AR 32, 369, 374.

1  have a hernia repair.  AR 27, 415.  On June 30, 2011, Hite underwent a ventral hernia

2  repair with mesh.  AR 30, 614.  By July 9, 2011, a CT scan of the abdomen and pelvis

3  showed no recurrent hernia or other abnormalities.  AR 30, 612.

4      The ALJ noted that Hite fractured her left ankle on September 3, 2011, after

5  climbing a brick wall and falling seven feet while jumping off a fence.  AR 22-23, 604.

6  As of February 1, 2012, an imaging study indicated that Hite had intact hardware, soft

7  tissue swelling and slight widening of the ankle mortise.  AR 23, 558.  She had

8  decreased range of motion with increased tenderness, but her incision was well healed.

9  AR 23, 559.  The doctor recommended physical therapy and home exercises.  AR 23,

10  559.  The ALJ found no objective medical evidence that the ankle condition had lasted

11  or could be expected to last for a continuous period of not less than 12 months, and

12  found that no aggressive treatment was recommended or anticipated.  AR 23.

13  Accordingly, the ALJ found that the ankle condition was not severe.

14      Even assuming the ALJ erred, any error would be harmless.  In addition to a

15  hypothetical based on medium work, the ALJ asked a hypothetical limited to light work

16  and the vocational expert responded with representative jobs that Hite could perform.

17  AR 70.  Because this matter is being remanded, the ALJ is free to reconsider whether

18  Hite's RFC should be less than medium work.

19      **E.   Credibility**

20      "To determine whether a claimant's testimony regarding subjective pain or

21  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*

22  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine

23  whether the claimant has presented objective medical evidence of an underlying

24  impairment 'which could reasonably be expected to produce the pain or other

25  symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

26  (en banc)).

27      Second, when an ALJ concludes that a claimant is not malingering and has

28  satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity

1   of her symptoms only by offering specific, clear and convincing reasons for doing so.'"

2   *Brown-Hunter v. Colvin*, 2015 U.S. App. LEXIS 13560, *14 (9th Cir. Aug. 4, 2015)

3   (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  "A finding

4   that a claimant's testimony is not credible 'must be sufficiently specific to allow a

5   reviewing court to conclude the adjudicator rejected the claimant's testimony on

6   permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

7   pain.'"  *Brown-Hunter*, 2015 U.S. App. LEXIS 13560, *14-*15.  "'General findings are

8   insufficient; rather, the ALJ must identify what testimony is not credible and what

9   evidence undermines the claimant's complaints.'"  *Id.* at *15 (citation omitted).

10         In weighing credibility, the ALJ may consider factors including:  the nature,

11   location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

12   and aggravating factors (e.g., movement, activity, environmental conditions); type,

13   dosage, effectiveness, and adverse side effects of any pain medication; treatment,

14   other than medication, for relief of pain; functional restrictions; the claimant's daily

15   activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346

16   (citing SSR 88-13) (quotation marks omitted).  The ALJ may consider:  (a)

17   inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies

18   between a claimant's statements and activities; (c) exaggerated complaints; and (d) an

19   unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

20         Hite testified that she could not work because she was "in pain all the time" from

21   her shoulders to her feet.  AR 25, 52.  She had severe depression for the last three

22   years, which caused her to stay in bed and not want to do anything.  AR 52, 55.  She

23   had problems using her hands because they "lock[ed]," got numb and burned.  AR 55.

24   She could stand without support for no more than ten minutes, and sit for 15 minutes.

25   AR 57.  Her pain medications helped her get around but she was still in pain.  AR 59.

26         The ALJ found that Hite's medically determinable impairments could reasonably

27   be expected to cause some of the alleged symptoms, but that her statements

28   concerning the intensity, persistence and limiting effects of her symptoms were "less

than fully credible." AR 26-27.  The ALJ primarily relied on five reasons:  (1) the objective medical evidence did not support Hite's claims of disabling pain and limitations; (2) Hite received routine, conservative treatment; (3) Hite failed to seek treatment; (4) Hite's medication was effective; and (5) Hite appeared to have exaggerated her symptoms and limitations.  AR 26-31.

### 1.  Objective Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ thoroughly discussed the medical evidence in the record, and found that the objective clinical and diagnostic findings did not support Hite's allegations.  AR 26-31.  Hite argues that she presented to the emergency room multiple times with severe pain.  AR 375-77, 415, 682-83, 687.  As the ALJ noted, when Hite complained of whole body pain on April 13, 2010, examination revealed only mild tenderness at the trunk and bilateral upper and lower extremities.  AR 27, 444-45.  By April 20, 2010, Hite reported a reduction in whole body pain with steroid use.  AR 27, 443.  On August 17, 2010, Dr. Flanagan conducted a complete orthopedic evaluation.  AR 28, 347-52.  Neurologically, Hite exhibited weakness at the bilateral hip, ankles, knees, shoulders, elbows, wrists and fingers secondary to effort and pain, but Dr. Flanagan noted that it did not represent true neurologic insult.  AR 28, 351.  Dr. Flanagan found that Hite did not have 4/11 symptoms necessary for a diagnosis of lupus, including serositis, photosensitivity, anemia, renal disorder, antinuclear antibodies, positive anti-smith, seizures with psychosis, malar rash or discoidal rash.  AR 29, 351.  Dr. Flanagan noted that Hites' pain was allodynic in nature, resembling that secondary to fibromyalgia corroborated by pain upon palpation of multiple areas.  AR 29, 351.  Dr. Flanagan opined that Hite had no functional limitations.  AR 29, 352.  On December 9, 2010, Hite reported whole body pain controlled with medication.  AR 29, 464.  An examination revealed tenderness diffusely.  AR 29, 464.  Hite was hospitalized from December 12-

19, 2010, with complaints of generalized pain that started two days before.  AR 29, 375.

A nerve conduction study and electromyogram revealed unremarkable findings, and an

echocardiogram revealed normal findings.  AR 29, 388-92.

On January 11, 2011, Hite reported feeling well and denied any pains she had

during the hospitalization.  AR 29, 399.  Hite was hospitalized from April 4-6, 2011, with

complaints of pain, shortness of breath and chest pains.  AR 30, 479-555.  A cardiology

work up and laboratory work were unremarkable.  AR 30, 479-80.  She was diagnosed

with acute chest pain, uncertain etiology, fibromyalgia, and systemic lupus, although no

lupus workup was completed.  AR 30, 479-555.  On May 13, 2011, Hite complained of

generalized ache and joint pain for three days.  AR 30, 682-729.  She was ambulatory

with a normal and symmetric gait, had no significant rash or lesions, and no

neurological abnormalities.  AR 30, 683-729.  Hite's pain was noted to be secondary to

fibromyalgia.  AR 30, 728.  On December 28, 2011, Hite reported no exacerbation of

muscle pain, which was controlled by pain medications.  AR 30, 467.  On February 6,

2012, Hite reported no exacerbation of chronic body pain, the pain was decreased with

medication, and she had no problems with her medications.  AR 30, 439.  The ALJ

properly considered the objective medical evidence in the record.[8]

## 2. Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th

Cir. 2007) (citation omitted).  The ALJ found that Hite received routine, conservative

treatment for complaints of widespread body pain, hypertension and mental

impairments.  AR 26.  Hite was generally treated with steroids, and occasionally Norco

and morphine, all of which reduced her body pain.  AR 26-30, 56-57, 439, 442-44, 447,

---

[8]   To the extent Hite argues that the ALJ did not properly evaluate her fibromyalgia in the context of SSR 12-2p, her argument fails.  The ALJ considered the longitudinal evidence regarding Hite's fibromyalgia and found that the records repeatedly noted only mild tenderness associated with fibromyalgia.  AR 27-31, 349-51, 445, 464, 688.

12

451, 467.  Hite argues that her seven hospital visits "can hardly be classified as 'routine'

or 'conservative'" and medications such as Norco or morphine are similarly indicative of

severe pain.  JS 23-24.  Even assuming the ALJ erred in discounting Hite's credibility

based on conservative treatment, remand is not warranted because the ALJ's

remaining reasoning and ultimate credibility determination are valid.  *Carmickle v.*

*Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).[9]

### 3.  Failure to Seek Treatment

The ALJ found that the absence of treatment for Hite's hernia was inconsistent

with the alleged severity of the functional limitations imposed by the hernia, and

diminished the credibility of her allegations regarding the hernia.  AR 26, 63, 231.

Failure to seek treatment or failure to follow prescribed treatment may be considered in

assessing credibility.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (claimant's

statements may be less credible if level or frequency or treatment is inconsistent with

degree of complaints); *see also Burch*, 400 F.3d at 681 (lack of consistent treatment

may be considered).

Hite was noted to have a supraumbilical hernia, reducible, in March 2008, and

she was referred for hernia repair.  AR 305.  She did not have the hernia repair at that

time.  On May 17, 2010, Hite inquired with her medical provider about filling out

disability paperwork for her hernia problem.  She had been seen for lupus and

fibromyalgia, but had not been seen for her hernia problem "in a long time."  AR 474.

She was told that she would not be given a medical statement for a condition that had

---

[9]   In *Carmickle*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid.  When an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning and *ultimate credibility determination*."  *Id.* at 1162 (emphasis in original).  In light of the ALJ's valid reasons for discounting Hite's credibility, substantial evidence supports the ALJ's credibility finding. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony).

1    not been treated in two years, and was advised to schedule an appointment.  *Id.*

2    Previously, on February 16, 2010, Hite was instructed to apply for MIA insurance to

3    have her hernia repaired.  AR 415.  On December 9, 2010, Hite reported that the hernia

4    was not causing abdominal pain.  AR 464.  On January 11, 2011, Hite complained that

5    her hernia had gotten worse, and she had occasional pain at the site of the hernia.  AR

6    399.  On June 28, 2011, at her preoperative appointment for hernia repair surgery, Hite

7    stated she had occasional pain from her hernia only when she reached for things.  AR

8    618.  On June 30, 2011, Hite had hernia repair surgery.  AR 30, 607, 614.  On July 9,

9    2011, Hite went to the emergency room after she lifted a heavy object and experienced

10   bleeding at the incision site.  AR 607, 609.  A CT scan of the abdomen and pelvis

11   showed no recurrent hernia, no evidence of abscess, and no acute abnormality in the

12   abdomen and pelvis.  AR 30, 607, 612.

13          Failure to seek medical treatment cannot support an adverse credibility finding

14   when it is due to lack of funds or medical coverage.  *Orn v. Astrue*, 495 F.3d 625, 638

15   (9th Cir. 2007).  However, even after Hite was instructed to apply for MIA insurance to

16   have her hernia repaired, she waited over 16 months to have the surgery and, during

17   that time, reported occasional or no pain due to the hernia.  The ALJ reasonably

18   discounted Hite's statements regarding lack of functioning due to her hernia problems

19   based on her failure to seek treatment for her hernia.  Hite does not argue otherwise.

20                    4.  Effective Medication

21          The ALJ found that Hite's medications have been relatively effective in controlling

22   her symptoms.  AR 26, 438-39, 444, 464, 471.  Impairments that can be controlled

23   effectively with medication are not considered disabling.  *Warre v. Comm'r of Soc. Sec.*

24   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

25                    5.  Symptom Exaggeration

26          The ALJ found evidence of symptom and limitation exaggeration in the record.

27   AR 26.  The ALJ noted that Hite's ability to climb a brick wall and jump off of a fence in

28   September 2011 conflicted with her allegation of severe and debilitating pain and

14

limitations.  AR 26, 604.  The ALJ also noted Dr. Taylor's mental status examination, during which Hite gave minimal effort and gave up easily on testing tasks as evidenced by improvement with prodding.  AR 28, 340.  The ALJ reasonably interpreted the evidence as showing symptom and limitation exaggeration.

### 6. Conclusion

The court concludes that the ALJ's finding on credibility on the whole is supported by substantial evidence.  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.[10]

### F.   Medical Evidence

Hite contends that the ALJ misconstrued portions of the medical evidence.  As discussed above, this matter is being remanded for reconsideration of Hite's mental and physical limitations.  Therefore, this court will address only Hite's contention that the Appeals Council erred in failing to incorporate a copy of new evidence into the record and that the ALJ erred in failing to consider her obesity.

"If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

---

[10]  The ALJ did not improperly discount the lay witness statement of Hite's friend, Dorienne Brewster.  The ALJ found Ms. Brewster's statements "partially credible" because they parroted Hite's subjective complaints.  AR 27.  An ALJ may discount lay witness testimony that is similar to the claimant's subjective complaints when the ALJ has provided clear and convincing reasons for rejecting those subjective complaints. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  The ALJ's finding that Ms. Brewster's statements mirrored Hite's allegations is supported by substantial evidence.  *Compare* AR 191-98 *with* AR 200-07.  As discussed above, the ALJ properly discounted Hite's credibility.  Therefore, the ALJ may discount the lay witness statements for the same reasons.  *See Valentine*, 574 F.3d at 694 (wife's testimony properly rejected when ALJ properly discounted husband's similar testimony).  Moreover, the ALJ properly discounted Ms. Brewster's statements for the additional reason that Ms. Brewster had limited contact with Hite.  AR 27.

administrative law judge hearing decision." 20 C.F.R. § 404.970(b).  Here, the Appeals Council acknowledged the new evidence and concluded that it did not relate to the period before the ALJ's decision: "We also looked at the additional evidence you submitted from Arrowhead Regional Medical Center and Centinela Hospital Medical Center dated September 10, 2012 through October 15, 2013.  The Administrative Law Judge decided your case through August 9, 2012.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before August 9, 2012." AR 1-2.  Hite argues that the additional evidence shows that she continued to have physical problems after the ALJ's decision. JS 27.  Thus, the Appeals Council reasonably concluded that the evidence "is about a later time." AR 1; *see* 20 C.F.R. § 404.970(b) (when new and material evidence is submitted to the Appeals Council, the evidence shall be considered if it relates to the period on or before the date of the ALJ's decision).  Hite has not shown "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

Hite argues that the ALJ did not consider her obesity.  Because the record does not show that Hite could not work because of functional limitations due to obesity, the ALJ did not err.  *See Burch*, 400 F.3d at 683-84.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 12, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge